Good morning, Your Honors. I'm Julianna Drouse. I'm representing Conciette Robinson, the petitioner in this case. May I please report? Your Honor, in this case, the second-degree felony murder rule in California was unforeseeably and retroactively expanded in violation of due process. The incident of this offense occurred in 1998. In this case, the state court approved the conviction of a man for murder that was not murder but only manslaughter at the time of the incident. In the year 2000, the California Supreme Court, in the case of Lasko, which I cited in my brief, stated that one who shoots and kills another in the heat of passion and with the intent to kill is guilty only of voluntary manslaughter, yet one who shoots and kills another in the heat of passion and with conscious disregard for life, with the intent merely to injure, a less culpable mental state than intent to kill, is guilty of murder. This cannot be and is not the law. Robertson then changed that and made that the law. The State relies on the case of Hansen, which was decided in 1994, which held that the intentional discharge of a firearm into an inhabited dwelling could form the basis for second-degree felony murder. But when you read that case, that case would not support felony murder in this case. That case specifically talked about, number one, that like assault or that, excuse me, that the intentional discharge of a firearm into an inhabited dwelling, most homicides are not the result of that crime. In this case, the intentional, the discharge, grossly negligent discharge of a firearm is the basis of most murders, just like assault. I was having some question about Hansen, because there they say the felony of discharging the firearm at the dwelling didn't merge into the resulting homicide. So in some senses, it seemed to me it was an expansion. But your argument, as I read it, was that you're somehow saying it actually narrowed the felony murder rule. And I was finding that a little bit in collision with the language of the case. Maybe you could explain your position. And the language of Hansen, Hansen is a very interesting case. Actually, when you look at Hansen, Hansen holds that, as I stated, that the discharge of a firearm, intentional discharge of a firearm into an inhabited dwelling can form the basis of second-degree felony murder. That's classic second-degree felony murder. That's very similar to throwing a bomb into a building or setting a building on fire that you knew people were living in. Now, so that's very different than what you have here. In that act itself, I'm not, you know, in the common sense of what malice would mean, that's a malicious act. The discharge, grossly negligent discharge of a firearm is a very different type of act. You do not have the same type of malice, number one. But what the Hansen case says, first of all, is that they recognize that most homicides are not the result of the discharge of a firearm into an inhabited building. That's not true for grossly negligent discharge of a firearm. As assault, as with the crime of assault, most homicides are committed by the grossly negligent discharge of a firearm. All of the other felonies which can form the basis of second-degree murder, second-degree felony murder, none of them, none of them, none of them except for this crime, it can be said that they are the reason, you know, the results in, that most murders result as a result of those crimes. The second thing that if you read Hansen, in Hansen it specifically states that malice continues to be, even in implied malice, malice continues to be an element of murder. It's just simply implied because of the act itself shows, the act of the felony shows murder. In Hansen, the Court states, under such a test that the Court, the Court specifically rejected in Hansen the collateral and independent purposes test that the, that the Court used in Robertson to use this crime as the predicate for felony murder. In Hansen, the Court stated that that test, which the Court used in Robertson, under such a test, a felon who acts with a purpose other than specifically to inflict injury upon someone is subject to greater criminal liability for an act resulting in death than a person who actually intends to injure the person of the victim. What you have in Robinson is a result that is totally ridiculous. Now, when I have a client coming into my office who says, you know, I live in an area of Oakland where everybody has guns, I've been shot, I am scared, I'm going to get a gun, I have to tell that person, you know, if you're going to bring out that gun, you better actually have the intent to kill somebody because if you only have the intent to scare them away, you can be convicted of murder for which you'll get 40 years to life. Is that this case in your view? Yes, that's exactly the case. The only thing you want to do is scare them away? Yes. Do the facts of where they were hit by the bullets suggest that they were on their way away at the time they were struck? You know, on this case, you had two expert witness testifying. You had one for the prosecution, one... I'm asking you about the evidence that was before the trial first. Which you had... One shot in the foot? One was shot in the foot, that's correct. The other shot in the back? Correct. It was a foggy night. And isn't it alleged that they were running away at the time they were shot? We don't know that. It was a foggy night. The visibility was unclear. It may have been going away from the shooter rather than toward him when they were shot. You know, Your Honor, I don't think that that's totally clear. You had two... You shoot somebody in the back of the head. You shot somebody in the... It's a shot in the back of the head, right? Right. But it was a foggy night. Visibility was totally unclear. The car was parked right very close to the house. When he was arrested, he said that he was scared. You know, you have to – you have to – you have a 26-year-old young African-American man living in this area of Oakland. He had no prior record. He had no criminal history prior to this case, none, none whatsoever. That – what you're bringing up is actually a jury question. That's right. And the jury is rude. Well, we don't know – we don't know how the jury came to this conclusion. The jury was out for some time. And when you look at the closing argument of the district attorney, the district attorney in this case recognized that she had a problem with malice. But she argues to the jury, you know, you don't have to worry about malice in this case if you find that he... My question is to you, not that I'm asking you to retry it. We are looking at this case on appeal, aren't we? And all we have to do, I think, is see was there a rational basis for the jury's finding. No. Would you – if you have – if you have a legal theory that's not valid, which I'm saying the second-degree felony murder in this case would not have been a valid legal theory, if you have that, if you cannot determine, if you cannot say for sure as to which – on which basis the jury made its decision, then you have to – you have to reverse. And in this case, you can't say that. You're really saying it's a legal question, not a factual question. I'm saying as to – right. Well, it's – right. I'm saying it's a legal question in that if – I'm sorry. I would like to reserve some time. But if, in fact, the second-degree felony murder is not a valid – then you cannot – this cannot be harmless error in this case. And I would like to reserve some time.  MS. GOTTLIEB Good morning. Jill Thayer on behalf of Respondent. I'd like to point out this case is here on habeas. It's a State law case. And so this Court is restricted in determining whether – whether the conviction violated federal law. And whether the merger doctrine has been expanded or contracted is a State law issue. And it's up to the California Supreme Court to decide whether to expand the merger doctrine to include grossly negligent discharge of a firearm. Now, the facts in this case, I think the Court has noted, are – are compelling. The petitioner shot at the victims 10 times. He hit one in the back of the head and one in the foot. There was one casing found on the porch, two at the bottom of the stairs to his apartment. And seven casings were found in the middle of the street in front of his residence. One bullet hole was found in the windshield of the car. Two were found two feet above the ground in a car parked across the street. And then, of course, there was the one in the head and the one in the foot. So all of this seriously disputes his statements that he was simply firing in the air and – and he was afraid. He repeatedly lied to the police. First, he said he had no involvement. Then, when the gun residue was found on his hand, he said he fired a weapon earlier in the day. Finally, he said he fired two warning shots. And then finally, he said he fired three shots while the men were fleeing while he stood on the sidewalk. None of those – none of those statements were true. He didn't even testify at trial. And there's – so there's no evidence that he honestly had any belief in his need for self-defense. He – he didn't testify at trial, and certainly he didn't, because he kept lying to the police. But in any event, this is a State law issue. There's no expansion. Well, it's not a State law issue if – if there's a due process violation for expanding, you know, without notice, the felony murder rule. That's – that's correct. Then you would have a Federal violation, correct? That's correct. If they unreasonably, unexpectedly, and indefensibly expanded the definition of a crime, that – that's the only violation of due process. That's very unusual. It didn't happen in this case. It's an odd case because you have the court itself saying it's an anomalous situation. You have, you know, in Hanson, they reject the collateral purpose test, and they resuscitate it in Robertson, in effect. So it – there is a – I don't want to say flip-flop, but there is a – there's certainly a fluid situation in California as to what's what. That's correct. And in Robertson, there were – there were dissents, too, that were – that were concerned about the anomaly. But the California Supreme Court in Robertson said that anomaly is always present in the context of the felony murder rule. And in Hanson, in 1994, very similar felony, discharging a firearm at an inhabited dwelling. So there's just – it's just not unexpected or indefensible that they would decline to extend the merger rule. In Hanson, the court noted the merger rule isn't expanded beyond assault. This isn't an assault. The reason the California Supreme Court ruled the way it is is because firing a firearm is so dangerous. And in this situation especially, he wasn't firing it in the air. He was firing it at people as they were fleeing. And so there's just no reason to think that this conviction violates due process. I'm willing to submit if there's no other questions. Thank you. You know, the difficulty – it's not really a question. The difficulty when you – when we try cases, when we – it's always in slow motion. At the time of the act, it's fairly rapid. Whatever happened here happened in a flash. So that it's – it's easy enough when you analyze it to say, well, he was doing this, that, or the other. But at the moment, he was at least acting in rapid succession, don't you think? He was – but he did have time to run out into the middle of the street. I mean, I'm sure it felt like it was happening fast to him. But the physical evidence completely counters his statements that he was firing into the air. So, thank you. Thank you. You have some time for rebuttal. Just very briefly. You know, the problem in this case is seen right in the opinion itself. The Court had to see that as in assault, with this crime, most homicides are committed by the act of shooting a gun, the same is true with assault. So they had to get around that somehow. So what did they do? They came up with a ridiculous proposal, or the ridiculous law, that, okay, not all negligent discharge of a firearm can be used, you know, will not merge. Some of them will merge. The ones that will merge will be if the defendant had the intent to kill the guy. But it won't merge if he had the less culpable intent of just trying to scare someone away. Now, that makes no sense. This is an unforeseeable, unexpected result. It is ridiculous. We have a ridiculous law in California which is unjust and needs to be corrected. You know the difficulty? The trajectory of the bullet can have some bearing on whether Triathlete can conclude that he was trying to scare him away or whether he was trying to kill him. That's correct. But we don't know what Here we do know what the trajectory of the bullets were, don't we? But we do not know on what the jury relied in reaching their verdict. Because certainly, you know, the State says that this was a makes it like it was an easy case for the DA. It obviously wasn't. The DA relied on felony murder quite heavily in her closing argument. Said, you don't have to worry about Malice in this case. If you find he shot that gun, he's guilty. End of story. Convict him. That's it. This is the case should be reversed. Thank you. Thank you. The case just argued is submitted. Robertson v. Reynolds.
judges: Farris, Noonan, McKeown